Next case, United States v. Kenneth Britton. Mr. Krause. Good morning, your honors. Okay, Mr. Krause, we gave you a little less time on this argument, and we would suggest that maybe you want to direct most of your argument to the organizer or leader of the Criminal Activity Enhancement. Thank you, your honor. That was my plan. Yeah, okay, thank you. May it please the court. My name is Ronald Krause. I'm an assistant federal public defender with the Middle District of Pennsylvania, and I represent the appellant, Kenneth Britton. I'd like to reserve two minutes for rebuttal. That request will be granted. I'll begin with the issue that the court would like to hear about, which is a four-level organizer-leader enhancement of 3D1.1. That could be applied only if the district court makes a finding that criminal activity involved participants, as defined in the guidelines, or in the alternative that criminal activity was otherwise extensive, as defined in the guidelines. And here the record supports neither finding. And as a matter of fact, the district court … What should we take by the fact that Adkins pleaded guilty to being a co-conspirator? Well, I don't think there's much to be taken from that, given that there's no question that she was a prostitute and she was a victim. And the fact that she might have at some point become involved in … She was a victim, but then she became involved. I didn't see anything in the record which showed that she stopped being a prostitute. No, but didn't she take on additional responsibilities? Well, it's possible, Your Honor. The government makes much of the chief prostitute concept or, excuse my language, the bottom bitch position as somehow rising to the level of participant. But I just don't think there's any basis for that. Isn't your argument, though, the fact that the district court didn't actually find at the time of application of the enhancement that there was indeed another participant? Yes, exactly. Isn't that the crux of your argument? Well, yes. Okay. But, you know, when I look at this, you know, you've made a good argument in this regard. When I look, though, at the enhancement, you have the other subsection where it was otherwise extensive. And I'm not sure that our case law says that if there's a finding of a leadership enhancement based on otherwise extensive that you need to make that finding that there was a second participant. All the cases, Hebling, Antico, all require that there be at least one other participant besides the defendant. The cases are all in agreement on that. Did any of those cases really interpret the otherwise extensive section? Well, in Antico, there was a question of whether or not the district court properly included, it was a bank fraud case, and whether or not the district court properly included as participants victims of the extortion scheme. And there they said that it was because of that, it was unclear from the record whether or not the district court properly completed the otherwise extensive analysis. So determining whether or not there is that other participant seems to be a part of both analyses, both prongs of the analyses, both the five participants and the otherwise extensive. If we were to find that there was no discussion at the sentencing hearing or in the pre-sentence report regarding the participation of one individual, Atkins, as someone who was engaged in activities beyond those of prostitution, are we in a position nonetheless to affirm her because of her conviction as a co-conspirator in the matter of enticing other young women into prostitution? I don't believe so, Your Honor. Why is that? I think if you look at the record as a whole, you see at the change of plea hearing, the government characterized Atkins as a prostitute. In the PSR, it does not identify anybody as a participant, which it usually would if they're applying this enhancement. And, in fact, the PSR again identifies Atkins as a prostitute. In the government's proposed findings, it identifies Atkins as a vulnerable victim. Paragraph 81 of the proposed findings, hard to see how a vulnerable victim all of a sudden becomes a participant. And at the sentencing hearing, again, the government does not identify anyone as a participant. Can we ignore her conviction as a co-conspirator in the interstate commerce enticement of women for prostitution purposes? Well, I don't know that we know specifically what it was that she pleaded guilty to. I have not seen a plea agreement saying what she agreed to or what the judgment of conviction was. I think the fact that she, all the record discloses is that she was given a few chores to do, besides the usual sex work that was expected of her. And it doesn't seem that doing a few extra chores while you're engaged in sexual activities, or I'm sorry, when you're not engaged in your primary job, which is the sexual activities, does not all of a sudden make them middle management and a participant for purposes of this enhancement. The Evans case in the Eighth Circuit and the Scott case in the Tenth Circuit would seem to suggest that we could take that into consideration here in determining whether or not she was a participant. Well, I would direct the Court's attention to a decision by a panel of this Court in United States v. Price, which involved the same defendants, co-defendants of Mr. Britton. It was the same panel. And with Robinson, looking at the two cases together, you get a real comparison and contrast of what the record needs to be in order to find an enhancement. In Robinson, you had at the sentence hearing the government saying that Robinson trained some of the pimps. He gave them counsel, advising them what to do, making recommendations. He discusses training a woman and using violence to train her. And that this other person that Robinson was training acknowledged his own leadership and tapes showed that he and Mr. Robinson worked together. Based on this record, the District Court applied for level enhancement, and on appeal the Third Circuit panel agreed, saying that, well, he coached at least one other co-conspirator. In very stark contrast, in the Price case, the Court had a very different record and came up with a very different result, and I think that record is very similar to the record here. At Price, if you look in the record at the sentencing hearing, nothing was said about training another pimp or another pimp admitting leadership role or Price working with anyone else. In this case, there was nothing about training another pimp or that Britain or anyone else admitted a leadership role or that Britain really worked with anyone else as a partner. In Price, the government stated, supported its argument for otherwise extensive, as based on six victims, 13 pimps, a conspiracy nationwide that Price arranged transportation, that Price bought and sold prostitutes. Therefore, Price's role was central and the four-level applies. In this case, at the sentencing hearing, the government said, well, there were 13 prostitute victims. Britain was engaged in force over them to control them, and, therefore, that made him both a leader and an organizer. I see my time is up. May I? And, of course, Price was an NPA. Price was an NPA, a non-publicist. Oh, yes, yes, both are. But I think they're very illustrative that one panel sees two different records and comes out with two different results, both of which we would argue were correct. Okay. We'll have you back on record. Thank you. Mr. Zubrod. Thank you, Your Honor. My name is Gordon Zubrod. I'm an Assistant United States Attorney for the Middle District of Pennsylvania. And the question, it seems to me, before the House are two. Number one, did the district court identify, consistent with Antico and Helbling, a participant, not including the defendant, over whom the defendant exercised a managerial or supervisory role? The answer is no. The question is, what is the remedy that this court has? Our answer is, does the court have to remand it for a hearing on that? Our answer is no. And the reason is that this court is free to affirm the judgment of the district court on any basis which it finds supported in the record, regardless of whether the judge makes findings of fact at all. And if you look at the record here, not only is there a basis on the five or more participants prong, there's also a basis on the otherwise extensive prong, because there are two individuals. I went back over the record this week, and there are actually two individuals, Deborah Sutton and Tana Adkins, who are participants over whom the defendant served in a supervisory role. Does our jurisprudence say that the otherwise extensive prong requires other participants? I think you have to read Antico and Helbling to say that. And as I recall, Antico- Even though Helbling wasn't an otherwise extensive case. That's true. Helbling was not. Antico may have been. I'm not certain on that. And how do we – isn't the evidence pretty sketchy, though, as to her participation and particularly difficult to- This is with Adkins? Yes, with Adkins. Isn't it difficult for us to make that determination without the district judge having gone through this in some detail? I guess my response would be a person charged as a co-conspirator, a person alleged to have committed violence against women, as Tana Adkins was, in the indictment over at Act 10.30, a person who pleaded guilty as a felon for conspiring in the brutalization of women along with the defendant, how can that person not be a participant? It seems to me that fits the definition. And if you go further and look at Adkins' specific activities, she was responsible for recruitment, training, discipline, bookkeeping. She was in charge of the women on the lot. They actually attacked, beat, and robbed a woman on the lot who would not join up with them. She may have started out as a victim, being prostituted, but she crossed the line and she became essentially a pimp in training, in the same way in the Robinson case who was a pimp. He was training pimps, and that's exactly what she was. And if you look at it, Deborah Sutton, and not only was she mentioned in the indictment, Deborah Sutton was mentioned at the change of plea hearing for Britton. And at that, the prosecutor put into the record that she was a bottom bitch. She was the chief prostitute for Mr. Britton. She took a juvenile and other girls from Indianapolis, Indiana, to Harrisburg where they were prostituted. She collected all the funds. She forwarded those funds to Mr. Britton and then took them on to other areas. And she did it without any oversight by Mr. Britton. She was a participant. And once you have a participant over whom the defendant exercises a supervisory or managerial role, then either prong applies. And you look to see if, on one hand, there were five or more participants. There were 14. Or if there were non-participants who were integral to the success of the criminal venture, and there were over a dozen women, including young girls, minors, that both Britton took care of and he directed Ms. Sutton and Ms. Adkins to take care of. If the Court has no further questions, I'll sit down. Thank you. Mr. Cross? I'd like to address Deborah Sutton. Again, no finding by the district court. And what the record shows is that the change of plea hearing, Deborah Sutton was identified as a prostitute. In the PSR, she was identified as a prostitute, not identified as a participant. In the government's proposed findings, it describes how Britton beat up Sutton rather badly. And at the sentencing hearings, the government identified Sutton as a victim of serious bodily injury. Now, it's hard to put together the fact that she was rising up in this organizational chart, and yet Britton was still victimizing her and beating her to keep her in line. And the same with Tana Adkins. Yes, the government portrays it as she was recruiting, she was training, she was bookkeeping, but we don't know what she really was doing. She could have been taking some girls out to dinner and telling them, hey, you can make a lot of money if you have sex for money. That's recruiting. Training them. You girls know what to do, right? Right. Bookkeeping. She sent some Western Union telegrams, Western Union funds to Britton on a couple of occasions. I think to say that she's a participant is an insult to her victimization here, and I think it's just an improper identification. Okay. All right. Well, we thank both counsel for an excellent job here on this case, and we will take the matter under advisement. Thank you, Your Honor.